1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  SANDRA LOCKSTEIN, as Wrongful      )   No. _____
    Death Heir, and as Successor-in-Interest to )
12  GUSTAV LOCKSTEIN, JR., Deceased,   )
    and JULIE LOCKSTEIN, GUSTAV        )   COMPLAINT FOR SURVIVAL,
13  LOCKSTEIN III, as Legal Heirs of   )   WRONGFUL DEATH - ASBESTOS;
    GUSTAV LOCKSTEIN, JR., Deceased,   )   DEMAND FOR JURY TRIAL
14                                     )
                                       )
15           Plaintiffs,               )
                                       )
16  vs.                                )
                                       )
17  CBS CORPORATION (FKA VIACOM        )
    INC., FKA WESTINGHOUSE             )
18  ELECTRIC CORPORATION),             )
    HUNTINGTON INGALLS                 )
19  INCORPORATED (FKA NORTHROP         )
    GRUMMAN SHIPBUILDING, INC.),       )
20  FOSTER WHEELER LLC (FKA FOSTER     )
    WHEELER CORPORATION),              )
21                                     )
             Defendants.               )
22  _____   )

23                          I.

24                       PARTIES

25       1.     Plaintiffs in this action are the above-captioned successor-in-interest to, or the

26  personal representative of the estate of Decedent; and the personal representatives on behalf of

27  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

28  "Plaintiffs."

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

2.	The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: GUSTAV LOCKSTEIN, JR. died August 18, 2017.  SANDRA LOCKSTEIN is the spouse of GUSTAV LOCKSTEIN, JR. and is hereinafter referred to as "surviving spouse."

3.	Decedent sustained an asbestos-related lung disease and death by precisely the following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4.	All of Plaintiffs' claims arise out of a similar series of occurrences:  repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent, resulting in cumulative, progressive, incurable lung diseases.

5.	Each Plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

6.	Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the

///

1  State of California, and that said defendants have regularly conducted business in the State of

2  California.

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.     <u>Jurisdiction</u>:  Plaintiff SANDRA LOCKSTEIN is a citizen of the State of

Wisconsin.  Plaintiff(s) JULIE LOCKSTEIN, GUSTAV LOCKSTEIN III are citizens of

Wisconsin.

Defendants are each corporations incorporated under the laws of and having its principal

places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

between citizens of different states in which the matter in controversy exceeds, exclusive of costs

and interest, seventy-five thousand dollars.

8.     <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of

California and assignment to the San Francisco Division of said district is proper as a substantial

part of the events or omissions which give rise to the claims asserted by Plaintiffs herein

occurred within the County of San Francisco, California, and Defendants are subject to personal

jurisdiction in this district at the time the action is commenced.

///

///

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

### III.

### CAUSES OF ACTION

FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF SANDRA LOCKSTEIN AS SUCCESSOR-IN-INTEREST TO THE DECEDENT GUSTAV LOCKSTEIN, JR. COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.    At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

1    sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

2    rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

3    products containing asbestos.  The following defendants, and each of them, are liable for the acts

4    of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

5    destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

6    of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

7    ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each

8    such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

9    role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

10    originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC.<br>CBS CORPORATION<br>WESTINGHOUSE ELECTRIC CORPORATION<br>WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY<br>B.F. STURTEVANT<br>KPIX TELEVISION STATION<br>PARAMOUNT COMMUNICATIONS, INC<br>GULF & WESTERN INDUSTRIES, INC.<br>NORTH & JUDD MANUFACTURING COMPANY<br>VAN NORMAN INDUSTRIES, INC. |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |

19        10.      At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

20    each of them, were and are engaged in the business of researching, manufacturing, fabricating,

21    designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

22    supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

23    promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

24    warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

25    otherwise directing and/or facilitating the use of, or advertising a certain product, namely

26    asbestos and other products containing asbestos.

27    ///

28    ///

1    11.    In part, and without limitation as to other defendants, defendant HUNTINGTON

2    INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),

3    manufactured, modified, serviced and/or repaired asbestos-containing ships and vessels.

4    12.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and

5    each of them, singularly and jointly, negligently, and carelessly researched, manufactured,

6    fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed

7    to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

8    supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

9    installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,

10   rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

11   and other products containing asbestos, in that said products caused personal injuries to users,

12   consumers, workers, bystanders and others, including the Decedent herein, (hereinafter

13   collectively called "exposed persons"), while being used in a manner that was reasonably

14   foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by

15   "exposed persons."

16   13.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

17   exercise due care in the pursuance of the activities mentioned above and defendants, and each of

18   them, breached said duty of due care.

19   14.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

20   have known, and intended that the aforementioned asbestos and products containing asbestos and

21   related products and equipment, would be transported by truck, rail, ship, and other common

22   carriers, that in the shipping process the products would break, crumble, or be otherwise

23   damaged; and/or that such products would be used for insulation, construction, plastering,

24   fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

25   limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

26   breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

27   release of airborne asbestos fibers, and that through such foreseeable use and/or handling

28   "exposed persons," including Decedent herein, would use or be in proximity to and exposed to

1   said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

2   persons working in proximity to said products, directly or through reentrainment.

3       15.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-

4   containing products referred to herein in a manner that was reasonably foreseeable. Decedent's

5   exposure to asbestos and asbestos-containing products is on current information as set forth at

6   various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference

7   herein.

8       16.    As a direct and proximate result of the acts, omissions, and conduct of the

9   defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure

10  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

11  or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and

12  incorporated by reference herein.

13      17.    Plaintiffs are informed and believe, and thereon allege, that progressive lung

14  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

15  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

16  asbestos and asbestos-containing products over a period of time.

17      18.    Decedent suffered from a condition related to exposure to asbestos and asbestos-

18  containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-

19  containing products presented any risk of injury and/or disease.

20      19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

21  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,

22  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

23  amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this

24  complaint accordingly when the true and exact cost thereof is ascertained.

25      20.    As a direct and proximate result of the aforesaid conduct of the defendants, their

26  ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

27  of medial care provided by Decedent's family members measured by, inter alia, the costs

28  associated with the hiring a registered nurse, home hospice, or other service provider, the true

1    and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to

2    amend this complaint accordingly when the true and exact costs are known or at time of trial.

3        21.    As a direct and proximate result of the aforesaid conduct of defendants, their

4    ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,

5    body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

6    related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,

7    from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven

8    at trial.

9        22.    As a further direct and proximate result of the said conduct of the defendants,

10   their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

11   entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

12   pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is

13   requested to amend this complaint to conform to proof at the time of trial.

14       23.    As a further direct and proximate result of the said conduct of the defendants,

15   their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-

16   containing products caused severe and permanent injury to Decedent, and ultimately Decedent

17   died on the date previously stated herein.

18       24.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

19   directors and managing agents participated in, authorized, expressly and impliedly ratified, and

20   had full knowledge of, or should have known of, each of the acts set forth herein.

21       25.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

22   fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

23   and each defendant's officers, directors, and managing agents participated in, authorized,

24   expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

25   each of their ALTERNATE ENTITIES as set forth herein.

26       26.    The herein-described conduct of said defendants listed in this paragraph below,

27   their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous

28   and in conscious disregard and indifference to the safety and health of "exposed persons."

1   Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive

2   damages according to proof against the following defendant only: FOSTER WHEELER LLC

3   (FKA FOSTER WHEELER CORPORATION).

4           WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

5   each of them, as hereinafter set forth.

6                           SECOND CAUSE OF ACTION
                              (Products Liability - Survival)
7

8           PLAINTIFF SANDRA LOCKSTEIN AS SUCCESSOR-IN-INTEREST TO THE

9   DECEDENT GUSTAV LOCKSTEIN, JR. COMPLAINS OF DEFENDANTS CBS

10  CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC

11  CORPORATION), HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP

12  GRUMMAN SHIPBUILDING, INC.), FOSTER WHEELER LLC (FKA FOSTER WHEELER

13  CORPORATION), THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A

14  SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

15  LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

16          27.     Plaintiffs incorporate herein by reference, as though fully set forth herein, each

17  paragraph of the First Cause of Action herein.

18          28.     Defendants, their "alternate entities," and each of them, knew and intended that

19  the above-referenced asbestos and asbestos-containing products would be used by the purchaser

20  or user without inspection for defects therein or in any of their component parts and without

21  knowledge of the hazards involved in such use.

22          29.     Said asbestos and asbestos-containing products were defective and unsafe for their

23  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

24  and/or death.  The defect existed in the said products at the time they left the possession of

25  defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

26  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

27  persons," including Decedent herein, while being used in a reasonably foreseeable manner,

28  thereby rendering the same defective, unsafe, and dangerous for use.

30.   "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Decedent and others similarly situated were exposed.

31.   In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

32.   On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

///

33.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

34.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

///

1    35.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE

2    ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

3    products, to be safe for their intended use, but that their asbestos and asbestos-containing

4    products, created an unreasonable risk of bodily harm to exposed persons.

5    36.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

6    their representations, lack of warnings, and implied warranties of fitness of asbestos and their

7    asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

8    suffered permanent injury and death as alleged herein.

9    37.    As a direct and proximate result of the actions and conduct outlined herein,

10    Decedent have suffered the injuries and damages herein alleged.

11    WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and

12    each of them, as hereinafter set forth.

13                           THIRD CAUSE OF ACTION
                             (Negligence - Wrongful Death)
14

15    PLAINTIFF SANDRA LOCKSTEIN, AS WRONGFUL DEATH HEIR, AND AS

16    SUCCESSOR-IN-INTEREST TO GUSTAV LOCKSTEIN, JR. DECEASED, AND

17    PLAINTIFF(S) JULIE LOCKSTEIN, GUSTAV LOCKSTEIN III AS LEGAL HEIR(S) OF

18    DECEDENT, COMPLAIN OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC.,

19    FKA WESTINGHOUSE ELECTRIC CORPORATION), HUNTINGTON INGALLS

20    INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), FOSTER

21    WHEELER LLC (FKA FOSTER WHEELER CORPORATION), THEIR "ALTERNATE

22    ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND

23    DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN

24    AS FOLLOWS:

25    38.    Plaintiffs incorporate by reference each paragraph contained within the First

26    Cause of Action as though fully set forth herein.

27    ///

28    ///

1    39.    The heirs at law of the decedent and their relationship to the decedent are as

2  follows:

3  NAME                                    RELATIONSHIP TO DECEDENT

4  SANDRA LOCKSTEIN                         Spouse

5  JULIE LOCKSTEIN                          Daughter

6  GUSTAV LOCKSTEIN III                     Son

7    40.    The individuals set forth as heirs constitute all of the surviving heirs of the

8  Decedent.

9    41.    As a direct and proximate result of the conduct of the defendants, their

10  ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

11  containing products caused Decedent to develop diseases from which condition Decedent died.

12  Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

13  filing the complaint.

14    42.    At all times prior to his death, decedent was a faithful and dutiful spouse to

15  plaintiff SANDRA LOCKSTEIN and parent to plaintiff children..

16    43.    As a direct and proximate result of the conduct of defendants, and each of them,

17  and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

18  of care, society, comfort, attention, services, and support of Decedent all to the damage of

19  Decedent's heirs.

20    44.    As a further direct and proximate result of the conduct of defendants, and each of

21  them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount

22  currently not ascertained.

23    WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as

24  hereinafter set forth.

25  ///

26  ///

27  ///

28

1

FOURTH  CAUSE OF ACTION
(Products Liability - Wrongful Death)

2

3      PLAINTIFF SANDRA LOCKSTEIN, AS WRONGFUL DEATH HEIR, AND AS

4   SUCCESSOR-IN-INTEREST TO GUSTAV LOCKSTEIN, JR. DECEASED, AND

5   PLAINTIFF(S) JULIE LOCKSTEIN, GUSTAV LOCKSTEIN III AS LEGAL HEIR(S) OF

6   DECEDENT, COMPLAIN OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC.,

7   FKA WESTINGHOUSE ELECTRIC CORPORATION), HUNTINGTON INGALLS

8   INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), FOSTER

9   WHEELER LLC (FKA FOSTER WHEELER CORPORATION), THEIR "ALTERNATE

10   ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND

11   DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH),

12   COMPLAIN AS FOLLOWS:

13      45.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

14   paragraph of the First, Second and Third Causes of Action herein.

15      46.    As a direct and proximate result of the conduct of defendants, and each of them,

16   Decedent's heirs have sustained the injuries and damages previously alleged.

17      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

18   each of them, as hereinafter set forth.

19

FIFTH CAUSE OF ACTION
(Premises Owner/Contractor Liability)

20

21      AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF

22   ACTION, PLAINTIFFS COMPLAIN OF DEFENDANT HUNTINGTON INGALLS

23   INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), AND THEIR

24   ALTERNATE ENTITIES (hereinafter PREMISES OWNER/CONTRACTOR LIABILITY

25   DEFENDANTS), AND ALLEGES AS FOLLOWS:

26      47.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

27   paragraphs 16 through 23 of the First Cause of Action herein.

28   ///

48.     At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed, and/or controlled by them.  Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in-business, assign, predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances.  The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY, and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY.

| DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| HUNTINGTON INGALLS INCORPORATED (FKA  NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. AVONDALE SHIPYARDS, INC. CONTINENTAL MARITIME INDUSTRIES, INC. EASTERN IDAHO CONSTRUCTION COMPANY INGALLS SHIPBUILDING, INC. NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY NORTH CAROLINA SHIPBUILDING NORTHROP GRUMMAN SHIP SYSTEMS, INC. SERVICE ENGINEERING INDUSTRIES, INC. |

///

///

///

49.     At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained,

managed, and/or controlled the premises where decedent was present.  The following

information provided herein is preliminary, based on recall over events covering many years and

further investigation and discovery may produce more reliable information.

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | ENTERPRISE (CVAN-65) | 4/16/1967-11/29/1968; 12/28/1968-5/16/1969; 5/20/1969-12/16/1969; 3/22/1970-4/20/1970; 7/9/1970-7/31/1970; 11/17/1970-10/3/1971; |
| | at: Naval Air Station Alameda, CA | 5/6/1967-7/10/1967 |
| | at: Hunters Point Naval Shipyard San Francisco, CA | 7/12/1967-9/5/1967; 3/15/1972-6/30/1972 |
| | at: Puget Sound Naval Shipyard Bremerton, WA | 7/29/1968 - 9/23/1968 |
| | at: Pearl Harbor Naval Shipyard Honolulu, HI | 1/14/1969 - 3/5/1969 |
| | at: Newport News Shipbuilding & Dry Dock Co. Newport News, VA | 10/11/1969-1/30/1971 |

Additionally, Decedent might have been present at these or other PREMISES

OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other

occasions.

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1     50.   . Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

2   LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing

3   insulation, other building materials, products, and toxic substances to be constructed, installed,

4   maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid

5   respective premises, by their own workers and/or by various unqualified or unskilled contractors,

6   and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances

7   into the ambient air and thereby created a hazardous and unsafe condition to Decedent and other

8   persons exposed to said asbestos fibers and toxic substances while present at said premises.

9     51.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

10   LIABILITY DEFENDANTS, and each of them, knew or in the exercise of ordinary and

11   reasonable care should have known, that the foregoing conditions and activities created a

12   dangerous, hazardous, and unsafe condition, and unreasonable risk of harm and personal injury to

13   Decedent and other workers or persons so exposed present on each of the aforesaid respective

14   premises.

15     52.   At all times relevant herein, Decedent entered said premises and used or occupied

16   each of said respective premises as intended and for each of the respective PREMISES OWNER/

17   CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at each of the

18   respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and

19   invitation.  In so doing, Decedent was exposed to dangerous quantities of asbestos fibers and

20   other toxic substances released into the ambient air by the aforesaid hazardous conditions and

21   activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said

22   PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

23     53.   Decedent at all times was unaware of the hazardous condition or the risk of

24   personal injury created by the aforesaid presence and use of asbestos products and materials and

25   other toxic substances on said premises.

26     54.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

27   LIABILITY DEFENDANTS, and each of them, remained in control of the premises where

28   Decedent was performing his work.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1       55.    Said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS

2   retained control over safety and other related conditions and circumstances at Decedent's job

3   site(s) and affirmatively contributed to and exercised, or failed to exercise, that control in a

4   manner that caused Decedent's injuries from asbestos-containing products.

5       56.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

6   LIABILITY DEFENDANTS owed to Decedent and others similarly situated a duty to exercise

7   ordinary care in the management of such premises so as to avoid exposing workers such as

8   Decedent, to an unreasonable risk of harm and to avoid causing injury to said person.

9       57.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

10   LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

11   reasonable care should have known, that the premises that were in their control would be used

12   without knowledge of, or inspection for, defects or dangerous conditions and that the persons

13   present and using said premises would not be aware of the aforesaid hazardous conditions to

14   which they were exposed on the premises.

15       58.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

16   LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect,

17   survey, or control said premises, or to abate, or correct, or to warn Decedent of, the existence of

18   the aforesaid dangerous conditions and hazards on or about said premises.

19       59.    Prior to and at the times and places aforesaid, said PREMISES

20   OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused

21   certain asbestos-containing insulation, other building materials, products, and toxic substances to

22   be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their

23   aforesaid respective premises, by their own workers and/or by employing various contractors,

24   and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances

25   into the ambient air and thereby injured Decedent.

26       60.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

27   LIABILITY DEFENDANTS, and each of them:

28   ///

1          a.  Should have recognized that the work of said contractors would create during

2  the progress of the work, dangerous, hazardous, and unsafe conditions, which could or would

3  harm the Decedent and others unless special precautions were taken;

4           b.  Knew or had reason to know, that the contractors it had selected and hired to

5  install, remove, abate, or otherwise handle asbestos-containing materials were unfit, unskilled,

6  unlicenced, or otherwise unqualified to do so;

7           c.  Failed to use reasonable care to discover whether the contractors it selected and

8  hired to install, remove, abate, or otherwise handle asbestos-containing materials were

9  competent, or qualified to do so.

10     61.    In part, Decedent was exposed to dangerous asbestos fibers and other toxic

11  substances by reason of such contractors' failure to take the necessary precautions.

12     62.    The work of contractors on premises controlled by the PREMISES

13  OWNER/CONTRACTOR LIABILITY DEFENDANTS created an unsafe premise and an unsafe

14  work place by reason of the release of dangerous quantities of toxic substances, including but not

15  limited to asbestos.

16     63.    The unsafe premise or work place was created, in part, by the negligent conduct of

17  the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY

18  DEFENDANTS.  Said negligent conduct includes, but is not limited to:

19          a.     Failure to warn of asbestos and other toxic dusts;

20          b.     Failure to suppress the asbestos-containing or toxic dusts;

21          c.     Failure to remove the asbestos-containing and toxic dusts through

22  use of ventilation or appropriate means;

23          d.     Failure to provide adequate breathing protection, i.e., approved

24  respirators or masks;

25          e.     Failure to inspect and/or test the air;

26          f.     Failure to provide medical monitoring.

27          g.     Failure to select and hire a careful and competent contractor or

28  subcontractor.

64.     The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of, inter alia, common law, California Civil Code § 1714, and California Labor Code § 6400, et seq., or California Health and Safety Code § 40.200, et seq., and regulations promulgated thereunder.  Accordingly, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said duties whether by themselves or others.

65.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, standards, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code § 6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, § 4150, § 4106, § 4107, and § 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code § 40.200, et seq., which empowers the Bay Area Air Quality Management District (B.A.A.Q.D.) to promulgate regulations including, but not limited to B.A.A.Q.D. Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/ CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions.  Defendants' violations of said codes include, but are not limited to:

///

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1      (a)    Failing to comply with statutes and allowing ambient levels of airborne

2  asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

3  statutes;

4      (b)    Failing to segregate work involving the release of asbestos or other toxic

5  dusts;

6      (c)    Failing to suppress dust using prescribed ventilation techniques;

7      (d)    Failing to suppress dust using prescribed "wet down" techniques;

8      (e)    Failing to warn or educate Decedent or others regarding asbestos or other

9  toxic substances on the premises;

10     (f)    Failing to provide approved respiratory protection devices;

11     (g)    Failing to ensure "approved" respiratory protection devices were used

12  adequately;

13     (h)    Failing to provide for an on-going health screening program for those

14  exposed to asbestos on the premises;

15     (i)    Failing to provide adequate housekeeping and clean-up of the work place;

16     (j)    Failing to adequately warn of the hazards associated with asbestos as

17  required by these statutes;

18     (k)    Failing to adequately report renovation and disturbance of asbestos-

19  containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11, Rules 2 and 14;

20     (l)    Failing to have an asbestos removal supervisor as required by regulation;

21     (m)    Failing to get approval for renovation as required by statutes; and

22     (n)    Failing to maintain records as required by statute.

23    66.    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of

24  them, were the "statutory employer" of the Decedent as defined by the California Labor Code and

25  California case law.

26    67.    Decedent at all times was unaware of the hazardous condition or the risk of

27  personal injury created by defendants' violation of said regulations, ordinances, or statutes.

28  ///

1       68.     At all times mentioned herein, Decedent was a member of the class of persons

2  whose safety was intended to be protected by the regulations, standards, statutes, or ordinances

3  described in the foregoing paragraphs.

4       69.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

5  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

6  reasonable care should have known, that the premises that were in their control would be used

7  without knowledge of, or inspection for, defects or dangerous conditions, that the persons present

8  and using said premises would not be aware of the aforesaid hazardous conditions to which they

9  were exposed on the premises, and that such persons were unaware of the aforesaid violations of

10  codes, regulations, and statutes.

11       70.     As a proximate result of the foregoing, Decedent developed asbestos-related

12  illness, which has caused great injury and disability as previously set forth, and plaintiff, has

13  suffered damages as herein alleged.

14       WHEREFORE, plaintiffs, pray judgment against defendants, their ALTERNATE

15  ENTITIES, and each of them, as hereinafter set forth.

16  **IV.**

17  **DAMAGES AND PRAYER**

18       WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

19  each of them in an amount to be proved at trial in each individual case, as follows:

20       (a)     For Plaintiffs' general damages according to proof;

21       (b)     For Plaintiffs' loss of income, wages and earning potential according to proof;

22       (c)     For Plaintiffs' medical and related expenses according to proof;

23       (d)     For Plaintiffs' cost of suit herein;

24       (e)     For exemplary or punitive damages according to proof against defendant FOSTER

25  WHEELER LLC (FKA FOSTER WHEELER CORPORATION), only;

26       (f)     For funeral expenses according to proof;

27       (g)     For loss of support according to proof;

28       (h)     For the loss of care, comfort and society;

1        (i)      For damages for fraud according to proof; and

2        (j)      For such other and further relief as the Court may deem just and proper, including

3    costs and prejudgment interest.

4    Dated: _____3/23/18_____                BRAYTON❖PURCELL LLP

5

6                                                By: _____

7                                                     David R. Donadio, Esq., S.B. #154436
                                                     Attorneys for Plaintiffs

8

9                                JURY DEMAND

10       Plaintiffs hereby demand trial by jury of all issues of this cause.

11   Dated: _____3/23/18_____                BRAYTON❖PURCELL LLP

12

13                                               By: _____

14                                                    David R. Donadio, Esq., S.B. #154436
                                                     Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Decedent:  GUSTAV LOCKSTEIN, JR., Deceased.

Decedent's injuries: Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the decedent, including, but not limited to breathing difficulties and/or other lung injury or damage, and ultimately, death.  Decedent was diagnosed with mesothelioma on or about July 2017, and may have other asbestos-related diagnosis to be determined.

Decedent died on August 18, 2017.

Retirement Status:  Decedent retired from his last place of employment at regular retirement age. He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Country Gardens Canning Company | Country Gardens Cannery Gillett, WI | Unknown | 7/1963-9/1964 (Summers) |

Job Duties: Decedent did not recall the specifics of this employment.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center/Naval Station Great Lakes, IL | Trainee | 6/30/1965-9/16/1965 |

Job Duties: Decedent completed basic training.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center/Naval Station Great Lakes, IL | Machinist Mate (Trainee) | 10/17/1965-1/14/1966 |

Job Duties: Decedent completed machinist mate training. Decedent cut, installed and removed asbestos containing gaskets and packing.

///

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center/Naval Station Great Lakes, IL | Machinist Mate (Trainee) | 1/14/1966-2/4/1966 |

Job Duties: Decedent completed nuclear power training.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy | Mare Island Naval Shipyard Vallejo, CA | Machinist Mate (Trainee) | 2/27/1966-9/16/1966 |

Job Duties: Decedent completed advanced nuclear power training. Decedent attended training sessions in classrooms and aboard vessels. Decedent worked in close proximity to others as they removed asbestos containing insulation. Decedent cut, installed and removed asbestos containing gaskets and packing.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy | Nuclear Power Training Unit Idaho Falls, ID | Machinist Mate (Trainee) | 10/3/1966-4/5/1967 |

Job Duties: Decedent completed advanced nuclear power training.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy | ENTERPRISE (CVAN-65) | Machinist Mate | 4/16/1967-11/29/1968; 12/28/1968-5/16/1969; 5/20/1969-12/16/1969; 3/22/1970-4/20/1970; 7/9/1970-7/31/1970; 11/17/1970-10/3/1971; 10/8/1971-2/13/1972; 2/27/1972-6/30/1972 |
| | at: Naval Air Station Alameda, CA | | 5/6/1967-7/10/1967 |
| | at: Hunters Point Naval Shipyard San Francisco, CA | | 7/12/1967-9/5/1967; 3/15/1972-6/30/1972 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Navy (cont'd.) | ENTERPRISE (CVAN-65) | Machinist Mate | |
| | at: Puget Sound Naval Shipyard Bremerton, WA | | 7/29/1968 - 9/23/1968 |
| | at: Pearl Harbor Naval Shipyard Honolulu, HI | | 1/14/1969 - 3/5/1969 |
| | at: Newport News Shipbuilding & Dry Dock Co. Newport News, VA | | 10/11/1969- 1/30/1971 |

Job Duties: Decedent worked as a machinist mate. Decedent removed asbestos containing insulation. Decedent cut, installed and removed asbestos containing gaskets and packing. Decedent was on board this ship during repair periods at Naval Air Station, Alameda, California; Hunters Point Naval Shipyard, San Francisco, California; Puget Sound Naval Shipyard, Bremerton, Washington; Pearl Harbor Naval Shipyard, Honolulu, Hawaii, and Newport News Shipbuilding & Dry Dock Company, Newport News, Virginia. Decedent was in close proximity to shipyard workers removing, cutting, and installing asbestos containing insulation during repairs and overhauls. At Newport News Shipbuilding & Dry Dock Co., Newport News, Virginia, decedent was in close proximity to employees of NEWPORT NEWS SHIPBUILDING & DRY DOCK CO. (HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.)) as they removed, cut, and installed asbestos containing insulation.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Patz Co. Pound, WI | Patz Co. Pound, WI | Machinist | 7/1972-12/1983 |

Job Duties: Decedent fabricated parts for farm equipment. Decedent cut steel and drove forklifts.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Dean's Foods | Dean's Foods Cannery Unknown city, WI | Unknown | 1984-1985 |

Job Duties: Decedent worked in a cannery.

///

///

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Unlimited Services Oconto, WI | Unlimited Services Oconto, WI | Assembler | 1988-1990 |

Job Duties:  Decedent assembled wire harnesses.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| United Healthcare | United Healthcare Unknown city, WI | Computer Programmer | 1991-2011 |

Job Duties: Decedent worked as a computer programmer.

NON-OCCUPATIONAL EXPOSURE:

FRICTION: From the 1960's through the 1980's decedent performed brake work on cars with his brother John Lockstein, 6555 Balcolm Lake Road, Gillett, Wisconsin. Decedent removed and replaced asbestos containing brakes purchased from NAPA AUTO PARTS (GENUINE PARTS COMPANY), Oconto Falls, Wisconsin; CARQUEST (CARQUEST CORPORATION, THE), Gillet, Wisconsin; CARQUEST (CARQUEST CORPORATION, THE), Marinette, Wisconsin; CARQUEST (CARQUEST CORPORATION, THE), Green Bay, Wisconsin, and ALL CAR, Marinette, Wisconsin. Decedent purchased replacement parts from NAPA AUTO PARTS, CARQUEST, and ALL CAR from the 1960's through the 1980's.